Argued and submitted May 18, reversed and remanded for reconsideration
December 2, 1992

Mary A. BROOKSHIRE,
*Petitioner,*

*v.*

SENIOR AND DISABLED SERVICES DIVISION,
*Respondent.*

(5-2418-AH9873-3; CA A71901)

842 P2d 450

Michael A. Keeney, Salem, argued the cause for petitioner. With him on the brief was Marion-Polk Legal Aid Service, Inc., Salem.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

## DEITS, J.

In November, 1990, petitioner applied to the Senior and Disabled Services Division (Division) of the Oregon Department of Human Resources for General Assistance (GA) and Medicaid benefits. Division denied her applications, and she requested a hearing. Hearings were held in April and September before a hearings officer, and Division issued a final order in September, 1991, denying both applications. Petitioner seeks review, and we reverse.

Petitioner argues that Division's findings are not supported by substantial evidence. Under Division's administrative rules, to be eligible for GA a person must be unemployable for at least 60 days as a result of a

"physical, mental, or visual condition that meets the GA unemployability criteria." OAR 461-125-510(2).

To be unemployable because of a physical condition,

"clients must have a condition such that they cannot perform or would experience severe palpitation, pain, fatigue, nausea with vomiting or difficulty breathing, by performing one or more of the following activities:

"(1) Lift five pounds occasionally.

"(2) Sit, stand or alternate sitting and standing, for at least four hours per work day.

"(3) Reach for, grasp, manipulate and hold objects with at least one hand.

"(4) Be independently mobile outside the home even with the use of mechanical aids (wheelchair, crutches, etc.) or unable to be independently mobile outside the home without the use of mechanical aids that are not available." OAR 461-125-550.

Applying the standards, the hearings officer found:

"Ms. Brookshire's physical condition does not meet these criteria. She can lift five pounds occasionally. She has free use of her arms and hands, She can sit and alternate sitting and standing for four hours per day. She is independently mobile. None of these activities cause severe pain, palpitation, fatigue, nausea with vomiting or difficulty breathing."

The hearings officer concluded from those findings that petitioner is not "unemployable" because of a physical condition.

We agree with petitioner that there was no substantial evidence supporting the hearings officer's findings. Petitioner testified extensively regarding her physical problems. She said that she had severe disabling pain and headaches, numbness in her right arm and hand that interferes with her ability to hold and move things, that she cannot sit for more than three or four hours, that she can only stand for one hour and that she can alternate standing and sitting for about three hours, but not consistently. She testified that, although she had been employed, it was very difficult for her to work because of her physical problems. She also testified that her condition is deteriorating:

"Q: Has your condition changes [sic]?

"A: No. I have but, no it has gotten worse. It has gotten a lot worse. My arm, my right arm and hand go numb on me all of the time and my left arm is starting to affect me the same way. When I do things like that it just, I, when I try to do anything it puts me in spasms real bad, and then that is when the numbness occurs and stuff and I just can't do it anymore."

Petitioner's treating physician, Dr. Knox, confirmed her medical problems. He discussed a number of her physical problems and, both in his testimony and in his written report, concluded that she was "totally and permanently disabled and unable to work in any capacity." He testified:

"Q. Now, what I am unsure of, and you may not agree with that, but what I am unsure of is, what is her capacity to sit, stand, or alternate sitting, standing for four hours at a time. She told me she couldn't, but she was hesitant because she hasn't done that, so she didn't know. And your report pointed to that, but it wasn't that specific.

"A. Ok.

"Q. What is your sense with this lady, doctor?

"A. Ok, I have known her, number one, and I've treated her since 20 of February, 1987. I've known her for quite a few years. She does have a documented [thoracic] outlet syndrome and brachial topothy that has gotten worse, it is on the right, the patient is right-handed. Let me document the better chart right here. She is right-handed. She has several disorders. The one that is causing the majority of her pain is the brachial plexus problem which involves the nerve towards the queen ucervical nerve roots and the peripheral

nerves in the right of her extremity. Documented by MG and it has been documented clinically and the patient cannot do sustained work, or repetitive movements of the arms. I would disagree that she can do, if I heard you correctly, fine dexterous movements with the right hand.

"Q. Yes, that is what I had observed. Yes.

"A. She cannot do that.

"Q. Ok.

"A. Repetitively, in the work place, you know.

"Q. In the right hand primarily.

"A. Right hand primarily, she cannot sit for long periods of time or stand for long periods of time. Repetitive motion, lifting, carrying, no climbing, and no activity that involves touching of the head on the neck, rotation of the head on the neck, because of the problem that involves the (inaudible). And this has been getting worse. Clinically, I think we pretty well documented that. The second thing that she has is a mixed type of headache disorder atypical migraine which is exacerbated by the problem in the shoulder. She is incapacitated by these headaches. Additionally, she has, I'm going to make a statement here because I've already given the diagnosis previously, she does have a psychiatric problem and it is my diagnosis that (inaudible) she has a superimposed major affective disorder, mood disorder, this she has been seen for in the past by myself, psychiatrists, and that is well documented, you have got her record back until 1987. She also has developed recent evidence for hiatal hernia and gastroencophogeal reflex. She has further causes neck and substernal discomfort, Dr. Clarence Hill, gastroenterologist, has documented that. She is on a drug called Pepsis, Pepcid, on a regular basis. This also is aggravating her problem. *It is my opinion that this woman is unemployable in today's job market in any capacity, and for the usual demands placed on you.*" (Emphasis supplied.)

There was some evidence in the record that supports the hearings officer's findings. In a written report filed in January, 1991, Knox checked a box that indicated that claimant had no difficulty moving about and, on a normal day, could carry and lift 5 to 10 pounds, could walk for two hours, sit for six hours and stand for one hour. However, Knox's testimony in June, 1991, is inconsistent with that report. The report of the orthopedic consultant who evaluated petitioner also provides some support for the findings. It states that

claimant has full, painless range of motion in both shoulders and that she showed no clinical evidence of thoracic outlet syndrome. In addition, petitioner testified that, although she has difficulty moving around, she is not housebound and does some limited shopping and attends outside meetings.

■   Substantial evidence exists to support a finding when the record, viewed as a whole, would allow a reasonable person to make that finding. ORS 183.482(8)(c). As we explained in *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988), in reviewing for substantial evidence, we need to look at the whole record with respect to the question being decided, rather than one piece of evidence in isolation. If an agency's finding is reasonable, keeping in mind the evidence both for and against its finding, there is substantial evidence. Viewing the evidence here as a whole, we do not think that a reasonable person could find, as the hearings officer did, that claimant was not unemployable because of a physical condition. The testimony of both claimant and her treating physician was extensive and detailed as to her physical problems and her inability to perform the tasks delineated in OAR 461-125-550 without significant pain. The hearings officer did not find that claimant or her physician were not credible, nor did he explain why the evidence that they presented was not persuasive. In view of that and the limited evidence that supports the hearings officer's finding, we conclude that his findings regarding claimant's physical condition were not supported by substantial evidence.

■   Petitioner also argues that Division's findings supporting its conclusion that she is not unemployable because of a mental condition are not supported by substantial evidence in the record:

"To meet GA and GAM-BAS unemployability based on mental criteria, the client must:

"(1)   Have a diagnosed mental disorder under the current Diagnostic and Statistical Manual of Mental Disorders that results in an impairment in the client's ability to function.

"(2)   Present documented evidence that the impairment of ability to function is severe enough to prevent work activity due to one of the following:

"(a)   Severe disturbances of thinking and behavior that entail potential harm to self or others;

"(b)   Severe disturbances of all components of daily living requiring a structured, supervised environment;

"(c)   At least two of the following conditions, along with specific evidence of how the conditions prevent the client from performing work activity:

"(A)   Severe deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner;

"(B)   Severe difficulties in maintaining social functioning and inability to interact appropriately and communicate effectively with others;

"(C)   Severe restrictions in daily living or self-care skills;

"(D)   Frequent episodes of deterioration or decompensation in work or work-like settings that cause the individual to withdraw from that situation or worsens signs and symptoms." OAR 461-125-590.

The hearings officer found:

"Ms. Brookshire does not have a mental disorder that prevents her from working. She does not have severe disturbances of thinking, behavior and of all components of daily living. She does not require a supervised living situation. She stays at the half-way house by her own choice—without a job, money or income she has no other option but to stay there. The occasional depressed mood and lack of concentration does not result in frequent failure to complete tasks. She does not have difficulty maintaining social functioning; she interacts appropriately and communicates effectively with others. She does not have restrictions in daily living or self-care skills (except for the ones she imposes on herself by staying in the half-way house). She does not have episodes of deterioration or decompensation in work or work-like settings."

There is evidence in the record that is contrary to the hearings officer's findings. It consists of petitioner's testimony that she has serious difficulties in concentrating that result in her inability to complete tasks, that she has difficulty in interacting socially and in functioning on the job because of her pain. There is, however, also evidence in the record that supports the hearings officer's findings. An evaluation of her psychological condition by Dr. Anderson concluded that she showed "very little evidence of pain behavior" and that her

ability to concentrate was good. She noted that petitioner did not complain of depression or anxiety and was "clearly not psychotic." There was also evidence that refutes petitioner's assertion that she is not able to function. She successfully retained employment for some time. She worked as a seamstress for one and one-half years and worked eight hours a day as a DMV telephone operator while incarcerated for two and one-half years. She worked at a cannery for part of one season and only left work at the end of the season. She also worked as a drug and alcohol counselor from 1976 to 1979. In contrast to her testimony regarding her physical condition, she did not testify that her mental condition had deteriorated. Viewing the evidence as a whole, the agency's finding that she was not unemployable due to a mental condition is supported by substantial evidence.

Petitioner also assigns error to the hearings officer's conclusion that she was not eligible for Medicaid because she proved that she had a disability that qualified her for such benefits. A disability is defined for Medicaid as

"the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience." 20 CFR § 416.905(a).

The hearings officer found:

"Ms. Brookshire does not meet this definition. She does not have a mental impairment that precludes her from working. Her physical impairment is severe because it limits the physical tasks that she can do. It limits her ability to lift, bend, stoop, climb, kneel, walk and stand. It has lasted 12 months. However, it does not prevent her from doing the sedentary work activities that she did as a drug and alcohol treatment counselor. Therefore, since she is physically and mentally able to do her past relevant work activity as a counselor, she is not disabled and is not entitled to Medicaid."

Given our conclusion regarding the hearings officer's findings about claimant's physical condition, we remand for reconsideration of her Medicaid eligibility also.

Reversed and remanded for reconsideration.